IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DARLENE LEE,

        Plaintiff,

        vs.                                 Case No. 10-4117-JTM

MICHAEL J. ASTRUE,
    Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

Plaintiff Darlene Lee has applied for Social Security disability and supplemental security income benefits. Her application was denied by the Administrative Law Judge (ALJ) on June 8, 2009, a decision affirmed by the Appeals Council on July 21, 2010. There are two allegations of error by Lee: (1) that the ALJ improperly discounted the opinion of her treating physician, Dr. John Eplee; and (2) that the ALJ erred in finding that her subjective testimony was not credible.

Plaintiff-claimant Lee was born in 1966. She has stated that she became disabled beginning on March 2, 2007 due to a variety of physical and emotional impairments, including low back pain. In particular, she cites back problems which were diagnosed and treated in 2000 and again in 2001, as well as a fall from a ladder resulting in knee and leg injuries. She has a high school education and has worked as a Licensed Practical Nurse (LPN). The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 16-21), and the briefs of

Lee (Dkt. 6, at 2-6) and the Commissioner (Dkt. 11, at 3-14).

The ALJ determined that Lee suffered from the severe impairments type 2 diabetes with early peripheral neuropathy, mild degenerative disc disease in the cervical and lumbar spine with mild neuroforaminal stenosis, mild to moderate degenerative joint disease in the cervical spine, as well as knee and carpal tunnel injuries. However, he found that Lee's impairments did not meed or exceed any listed impairments, and that she retained the residual functional capacity (RFC) to perform sedentary work, and was thus not disabled.

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show that she is engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether

substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

The ALJ found that the report of Lee's treating physician, Dr. John Eplee had "only partial consistency with the record." (Tr. 19). The ALJ continued:

> For example, at number 10., page 13, he indicates that claimant frequently cannot feel her feet or tell where they are and this has resulted in numerous trips and/or falls. This simply is not corroborated in the record with the exception of a documented fall in March 2009. Further, at number 17. he gives her a very reduced residual functional capacity assessment which is inconsistent with a preponderance of the evidence in this case. For example, there are electromyography and nerve conduction findings in exhibit 25F which showed only "possible small fibers peripheral neuropathy in the feet" with the rest of the study being unremarkable and no evidence of any lumbar radiculopathy or myopathy. This is consistent with a neurological examination which is found in Exhibit 25 F during an evaluation by Fariz Habib, M.D., a neurologist who performed the examination in October 2008. At that time there was no tenderness over the lumbar paraspinal regions and the claimant demonstrated full range of motion in all joints in the lower extremities. Straight leg raising was present or the right at 45° but a motor examination revealed no focal muscle bulk wasting. Strength was 5/5 throughout. There was diminished pinprick sensation and light touch more evident on the right side and deep tendon reflexes were symmetric and active without pathologic responses. Her gait and coordination were normal. There is absolutely no indication that the claimant was unable to feel her feet or know where were when walking, especially given the fact that her gait and coordination were entirely normal and sensation deficits were only mild objectively. Clinical findings also do not support the degree of severity alleged. For example, a magnetic resonance imaging scan of the claimant's cervical spine

taken in September 2007 and found in Exhibit 18 F, page 3 shows only mild degenerative disc disease with no significant stenosis. X-rays of the cervical spine showed mild to moderate degenerative joint disease as indicated at page 9 of Exhibit 17 F. The claimant's lumbar spine was found to have only mild degenerative changes and some mild right neural foraminal stenosis based on magnetic resonance imaging undertaken in July 2007 and found that page 16 of Exhibit 17 F.

The claimant did undergo right knee surgery in May 2007 as seen at page 24 of Exhibit 17 F and subsequent outpatient treatment records show that the claimant was relatively comfortable within one month of her surgery. The Administrative Law Judge notes that the claimant was doing a lot of lifting at her job and quit due to a knee injury and not to the back problems. A reviewing physician found no worsening of the claimant's overall condition as of January 2008 as indicated in Exhibit 23. It is also noteworthy that the claimant is in vocational rehabilitation to finish her bachelor's degree and return to work. She has relatively good activities of daily living as indicated in Exhibit 10 E and over all, her complaints far outweigh the totality of the diagnoses and supporting clinical findings. Based on all the above, Administrative Law Judge finds Dr. Eppley's conclusion of disability, found at page 12 of Exhibit 24 F, to be inconsistent with the overall record. Further, although the claimant alleges a medical need to lie down, one of her treating physicians has recommended that she lose weight and achieve practice portion size control and exercise with regular activity. This is inconsistent with a medical need to lie down. Consequently, the Administrative Law Judge finds the residual functional capacity assessment and limitations set forth above are consistent with a preponderance of the evidence in this record.

(Tr. 19-20).

In her brief, Lee challenges the ALJ"s rationales for discounting Dr. Eplee's opinion, and (1) cites other evidence in the record showing that she did in fact have pain in her legs, (2) argues that Dr. Habib's report is in fact consistent with Dr. Eplee, (3) that radiographic studies in fact support Dr. Eplee's conclusions, (4) that she quit her job due to a combination of back and knee pain, (5) that the evidence showing a lack of deterioration in 2008 does not reflect a worsening in 2007, and (6) that her actual daily activities are more circumscribed than those identified by the ALJ,

The court finds that the ALJ's decision to discount the opinion of Dr. Eplee was not reversible error. The ALJ is required to following the recommendations of a treating physician in

4

the absence of specific and legitimate reasons for rejecting the those findings. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498-1500 (10th Cir. 1992). But, if such reasons exist, the decision of the ALJ should be affirmed, even if the court would reach a different conclusion under a de novo review. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Although Lee points to other evidence in the record showing that she did indeed assert the existence of leg pain and occasional falls, the fact remains that the ALJ correctly determined there was an absence of medical evidence to corroborate the her contention that the numbness in her legs reached such a degree that it frequently caused her to fall down. In this light, the ALJ was entitled to note the absence of causal evidence, along with medical evidence showing that Lee had normal gait and coordination in 2008 — that is, well after the time when her condition had supposedly become disabling.

Plaintiff complains that the ALJ, having found Dr. Eplee's opinion not controlling, did not proceed to specify what lesser weight should be assigned to it. Lee also contends that Dr. Habib's report is in fact consistent with that of Dr. Eplee, citing portions of his report indicating a diminution in sensation and prescription of a pain reliever. (Dkt. 6, at 12).

But an ALJ who properly discounts a treating physician's opinion is not required to subsequently and explicitly articulate a correct alternative weight to assign the opinion, so long as such a conclusion is implicit in the remainder of the ALJ's opinion. *McDonald v. Barnhart*, 358 F.Supp.2d 1034, 1039 n.2 (D. Kan. 2005). Such is the case here, where the ALJ's opinion sets forth in careful detail the RFC he found appropriate, and that finding is supported by substantial evidence. Further, the fact remains that Dr. Habib found only *diminished* sensation, not its absence, and that the ALJ's assessment of Dr. Habib's report as indicating only mild objective impairments is a fair

conclusion. Dr. Habib explicitly noted that his tests showed "unremarkable" results as to nerve impairment. Again, the goal of the court is not to independently substitute its own judgment as to Lee's condition, but to determine whether substantial evidence supports the findings and conclusions of the ALJ.

The remaining challenges to the ALJ's decision as to the weight assigned to Dr. Eplee's opinion are not substantial. The ALJ's decision indicates that these considerations were relevant to the reliability as to Dr. Eplee's report based upon what they indicated as to Lee's credibility. Thus, in the second paragraph of the cited analysis, the ALJ noted that Lee apparently quit her prior employment "due to a knee injury and not to the back problems," that her condition had not worsened by January 2008, that Lee was attending school and had otherwise "relatively good activities of daily living," are all factors preceding the ALJ's conclusion that Lee's "complaints far outweigh the totality of the diagnoses and supporting clinical findings." (Tr. 19).

In evaluating claims of nonexertional symptoms such as pain, an ALJ must determine whether there is objective medical evidence of a physical or mental impairment capable of producing the symptom, whether a loose nexus exists between the impairment and the symptom, and whether the nonexertional limitation is disabling based on all objective and subjective evidence. *Luna v. Bowen*, 834 F.2d 161, 163-65 (10th Cir. 1987); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In this analysis, an ALJ should the amount and effectiveness of medication, the extensiveness and frequency of the claimant's attempts to obtain relief, the nature of her daily activities, as well as additional subjective measures of credibility that are peculiarly within the judgment of the ALJ. *See Wiley v. Chater*, 967 F. Supp. 446, 450 (D. Kan. 1997).

With respect to the ALJ's findings as to her own credibility, Lee complains that the ALJ's

decision did not explicitly address all of the factors set forth in *Luna v. Bowen*, such as her physician contacts, medication, and the effect of her depressive disorder. Further, as to those factors which the ALJ did explicitly address — those of her prior work and her daily activity level — Lee argues that the ALJ"s findings are in fact unsupported by substantial evidence. As to the former, she notes that the ALJ's statement that Lee had an extensive and good history of work as a lab technician was erroneous since she has not worked as a lab technician but as a LPN. As to the latter, she cites evidence in the record showing that she performs the cited educational and daily activities only with difficulty or assistance.

The court finds that the ALJ's credibility determination was not erroneous. The ALJ's passing reference to Lee's the prior successful work history as a lab tech played no deciding role in the decision. First, it is uncontroverted that the statement is not inaccurate as to Lee's successful work history as an LPN. More importantly, the passing reference played no role in the ALJ's decision, since the ALJ found that Lee could not return to her former work and instead found that her RFC would independently perform other, sedentary work..

Lee's assessment of her daily activities supplies no basis for a finding that the ALJ's decision as to her credibility was unsupported by substantial evidence. She contends, for example, that while she does housework, it is with the assistance of other people (Tr. 142-148; Dkt. 9, at 16). And she while she attends college classes, she has difficulty with here memory and has to frequently move around the class room. (Tr. 416-17). The court finds no error.

The ALJ accurately found that Lee's daily activities included preparing simple meals, caring for her children, doing laundry, cleaning the house, going shopping, and attending college classes, and that this level of activity was inconsistent the with level of impairment otherwise claimed by her.

The record contains statements by Lee directly denying the existence of problems with memory and concentration. Further, the fact that Lee was, with some accommodation, apparently able to successfully take twelve hours of college classes was directly relevant to her credibility. Although Lee contends that she was able to perform her daily activities only with difficulty, the ALJ was entitled to balance such claims with evidence in the record showing that Lee had told health care providers that in August 2007 that she was "doing pretty good," that her bilateral leg pain was "nearly 100% better," she could resume "many of her daily activities" without severe pain. Lee told another provider the following month that she was able to dress and bathe herself, drive, shop, cook, clean, do laundry, and watch television, although these activities took longer because of her impairments. She also reported that she "love[d] to exercise," working out as many as three times per week, for as much as two hours at a time while on the treadmill and lifting weights (Tr. 247). Lee's arguments as to the nature of her daily activities are arguments as to the weight of evidence, and do not supply a basis for overturning the findings of the ALJ.

The ALJ was not required to discuss in detail all the *Luna* factors, *Poppa v. Astrue*, 569 F.3d 1167 (10th Cir. 2009), and the ALJ did not err in discounting Lee's subjective complaints of pain. The assessment of a claimant's credibility is for the ALJ. *Hamilton v. Secretary of HHS*, 961 F.2d 1495, 1499 (10th Cir. 1992). This court will not substitute its judgment as to a claimant's credibility, where that finding is founded on substantial evidence. *See Casias v. Secretary of HHS*, 933 F.3d 799 (10th Cir. 1991). While the evidence shows that Lee received medication for her pain, there is substantial evidence in the record showing that Lee's knee and back pain was successfully controlled. Further, the ALJ did in fact find that Lee suffered from a medically determinable mental impairment of depressive disorder, NOS," but that this was not severe. (Tr. 17). This conclusion is

supported by substantial evidence, including Lee's own statements that her antidepressant medication worked.

As noted earlier, Lee argues that the ALJ erred, while recounting her former work history, in stating that she had formerly worked as a lab technician. Any such misstatement, however, was not prejudicial error under the circumstances of the case, since the ALJ reach his finding that Lee was not disabled based upon a determination that she could return to her former work. Rather, at Step 4 he specifically found that Lee could not return to her former employment, and proceeded to Step 5, assessing whether Lee's RFC would allow her to perform any other work in the national economy. Any error was therefore harmless.

Similarly, Lee argues that the ALJ erred is stating (Tr. 19) that she quit her prior employment because of a knee injury, when she actually quit her job because of back pain. Plaintiff has failed to show any prejudicial error. The medical evidence fails to document any complaints of back pain until after Lee left her employment in March of 2007, although it does show a injury to the knee. The record contains substantial evidence that Lee's subsequent complaint of back pain was successfully controlled by medication.

IT IS ACCORDINGLY ORDERED this 25th day of May, 2011, that the present appeal is hereby denied.

                                              s/ J. Thomas Marten
                                              J. THOMAS MARTEN, JUDGE